HARRIS, Judge.
Appellant was indicted for murder in the first degree. She was convicted of manslaughter in the second degree and the jury fixed her punishment at one year and assessed a fine of $500.00 against her. She was represented by employed counsel at trial who also represents her on appeal.
The evidence is not disputed. Appellant did not testify or offer any testimony in her behalf.
Robert L. Ingram testified that he was employed by the Montgomery Police Department and had been so employed for eighteen years. That on May 31, 1975, he received a call to go to 529-A Clayton Street, and he arrived at this address at 3:05 p. m. He said that he and Officer W. E. Nixon got to this address about the same time. They saw two women standing on the front porch and they identified themselves. The women were identified as appellant and her daughter Margaret Graham. The officers were there to investigate a shooting. Ingram asked what was going on, and appellant did not say anything but Margaret Graham said, “I don’t know.” Ingram went in the apartment and found the body of a black female who had been shot and she appeared to be dead. He said he definitely saw one bullet hole in the dead body and some blood, but he did not know how many times she was shot. This witness identified photographs of the body and the scene of the homicide, which were received in evidence without objections. Ingram further stated he found a knife in the juncture of the neck and left shoulder of the victim. He identified the knife as State’s Exhibit 4 and it was introduced in evidence.
Mr. Ingram also identified a .38 caliber pistol that appellant turned over to Police Officer Nixon, and it was received in evidence without objection.
Officer Nixon testified that appellant got the murder weapon, a pistol, out of the closet in the room where the deceased was found and gave it to him. This .38 caliber pistol was introduced in evidence without objection.
These investigating officers turned the case over to the Detective Division. Detective Roianne Rushton testified that she took a signed statement from appellant the same afternoon she was arrested after reading to her the Miranda- rights and warnings. A voir dire hearing was conducted out of the presence and hearing of the jury to determine the voluntariness of her statement. The statement was found to be voluntary and was read to the jury. The statement signed by appellant and read to the jury was to the effect that her *773 daughter shot the deceased with appellant’s pistol which she gave her daughter before they took a cab to the place where the killing took place. In the statement appellant said that her daughter had been living with her because she had a fight with her husband. That when they arrived at her daughter’s house, appellant entered the apartment by the back door and her daughter entered the front door. That they found a girl on the inside and Margaret asked her if she was going with her husband, to which question the girl replied, “What about it,” and started on Margaret with a knife at which time time-Margaret shot her twice with appellant’s pistol.
There was a stipulation that appellant did not fire the pistol that killed the deceased.
There was also a stipulation that appellant’s pistol was used by her daughter to shoot the deceased. There were two fired bullets in the pistol and four live bullets.
Mr. Richard A. Roper, Assistant State Toxicologist, whose qualifications were admitted by defense counsel, performed an autopsy on the body of the deceased. He stated he found two gunshot wounds made with .38 caliber bullets. He stated the cause of death resulted from hemorrhage and shock to the central nervous system associated with multiple gunshot wounds to the body.
Appellant moved to exclude the State’s evidence as to murder in the first degree which motion was overruled and denied. Appellant requested the general affirmative charge which was refused, and she filed a motion for a new trial which was overruled.
Appellant was tried as a principal in a murder where the trigger was actually pulled by Margaret Graham who was appellant’s daughter. Both appellant and her daughter were found at the death scene. The pistol belonged to appellant and she and her daughter went to the residence in a cab. Appellant gave her pistol to her daughter and she entered the apartment from the rear while her daughter entered through the front door.
The rule in this type of case is best stated in Stokley v. State, 254 Ala. 534, 49 So.2d 284, where the Supreme Court said:
“It is well established that when, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the other in the perpetration or commission of the offense, is a guilty participant, and in the eye of the law is equally guilty with the one who does the act. Such community of purpose or conspiracy need not be proved by positive testimony. It rarely is so proved. . The jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case. Morris v. State, 146 Ala. 66, 41 So. 274, and cases cited; Jones v. State, 174 Ala. 53, 57 So. 31; Teague v. State, 245 Ala. 339, 16 So.2d 877.
“When two or more persons enter upon an unlawful purpose, with a common intent to aid and encourage each other in anything within their common design, they are each responsible, civilly and criminally, for everything which may consequently and subsequently result from such unlawful purpose, whether specifically contemplated or not. Jones v. State, supra; Jolly v. State [94 Ala. 19, 10 So. 606], supra; Tanner v. State, 92 Ála. 1, 9 So. 613.”
*774 In Young v. State, 283 Ala. 676, 220 So.2d 843, we find this expression from our Supreme Court:
“Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the state’s evidence, the refusal to give the affirmative charge and the overruling of a motion for new trial, does not constitute error. Drummond v. State, 37 Ala.App. 308, 67 So.2d 280; Wade v. State, 24 Ala.App. 176, 132 So. 71.”
We hold this case was properly submitted to the jury for their determination.
Appellant claims that reversible error was committed when appellant did not appear at arraignment and plead in person. The record affirmatively shows that appellant and her attorney signed a waiver of arraignment and entered a plea of not guilty more than 30 days prior to the date of her trial. This procedure was in strict conformity with Act No. 314, approved August 10, 1973, which provides, in pertinent part as follows:
“§ 523(16.025a). Effect of plea of not guilty prior to time of arraignment.—(1) The provisions of this [section] shall apply only to counties having a population of not less than 150,000 nor more than 180,000 inhabitants according to the most recent federal decennial census.
(2) If a defendant in a criminal case pending in a court of competent jurisdiction shall enter a written plea of not guilty at any time prior to the day of his arraignment such plea shall constitute a waiver of his right to have an arraignment at which he is present in person or at which he is represented by an attorney. (1973, No. 314, appvd. Aug. 10, 1973.)
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. Accordingly, the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.